OPINION.
Drake, Ch. J.,
delivered the opinion of the court:
There is no controversy in this case over the fact of the claimant’s having rendered the services in transporting passengers and freight on its railroad for the Government, nor over the rates charged for the transportation. The only question is, whether the claimant’s apparent right of recovery is -cut off by any statutory provision. In order to the decision of this point it is necessary to examine certain Congressional legislation having relation, first, to the Burlington and Missouri Eiver Eailroad Company, a corporation in Iowa, and, secondly, to the claimant, a corporation in Nebraska.
By section 1 of the Act of May 15, 1856, 11 making a grant of lands to the State of Iowa, in alternate sections, to aid in the construction of certain railroads in said State” (11 Stat. L., 9, eh. 28), there was granted to'the State “every alternate section of land,, designated by odd numbers, for six sections in width on each side of each of said roads.”
act it was declared—
That the said lands hereby granted to the said State shall be subject to the disposal of the legislature thereof, for the purposes aforesaid, and no *622 other; and the said railroads shall l>e and remain public highways for the use of the Government of the United States, free from toll or other charge upon the transportation of any property or troops of the United States.
Among tbe roads to be aided was one "'‘from Burlington, on • tbe Mississippi Biver, to a point on tbe Missouri Biver, near tbe moutb of Platte Biver,” wbicb was constructed by “Tbe Burlington and Missouri Biver Bailroad Company,” a corporation created under tbe laws of tbe State of Iowa.
Sections 18 and 19 of the Act of July 2, 1864, ch. 216 (13 Stat. L., 356), enacted as follows :
Sec. 18." That the Burlington and Missouri Biver Bailroad Company, a corporation organized under and hy virtue of the laws of the State of Iowa, he, and hereby is, authorized to extend its road through the Territory of Nebraska from the point where it strikes the Missouri Biver, south of the mouth of the Platte Biver, to some point not further west than the one hundredth meridian of west longitude, so as to connect, hy the most practicable route, with the main trunk of the Union Pacific Bailroad, or the part of it which runs from Omaha to the said one hundredth meridian of west longitude. * ^ *
Sec. 19. That for the purpose of aiding in the construction of said road, there he, and hereby is, granted to the said Burlington and Missouri Biver Bailroad Company every alternate section of public land (excepting mineral lands as provided in this act), designated hy odd numbers, to the amount often alternate sections per mile on each side of said road, on the line thereof, and not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed. * * *
It will at once be noticed that tbis grant of lands to tbe Burlington and Missouri Biver Bailroad Company is not accompanied with any condition like that imposed by section 3 of tbe Act of May 15,1856, providing that tbe roads aided “ shall be and remain public highways for tbe use of tbe Government of tbe United States, free from toll or other charge upon tbe transportation of any property or troops of tbe United States.” Tbe grant, therefore, was an unconditional one.
April 10,1869, Congress passed a joint “ Resolution in relation to the Burlington and Missouri Biver Bailroad branch of the Union Pacific Bailroad” (16 Stat. L., 54), in tbe following terms;
That the act of Congress approved July two, eighteen hundred and sixty-four, granting certain lands to the Burlington and Missouri Biver Bailroad Company, to aid in extending its road through the then Territory of Nebraska, to connect with the Union Pacific Railroad, shall he so construed as to authorize said Burlington and Missouri Biver Bailroad Com *623 pany to assign and convey to a railroad-company, to Tie organized under tlie laws of tlie State of Nebraska, all the'rights, powers, and privileges granted and conferred by said act, and subject to all conditions and requirements therein contained.
May 12, 1869, under tbe laws of Nebraska, a railroad Company was incorporated, under the name and style of “The Burlington and Missouri Biver Bailroad Company in Nebraska,” tbe object of which was declared in'its articles of incorporation to be “to build a railroad from the city of Plattsmouth westward to Kearney, on the Union Pacific Bailroad.” And by said articles the directors of the company were “ authorized to purchase and take the assignment of .the franchise and property of any other company authorized by tbe laws of the United States or any other State to construct a road in the State of Nebraska.”
November 20, 1869, the Burlington and Missouri Biver Bail-road Company executed the following assignment to the Burlington and Missouri Biver Bailroad ¿Company in Nebraska:
Know all. men by these presents, that tbe Burlington & Missouri River Railroad Company, for tbe consideration named, and pursuant to a vote of tbe directors of said company, passed on tbe 19th day of November now current, do hereby assign, transfer, convey, and set over to the Burlington and Missouri River Railroad Company in Nebraska all the rights, powers, and privileges granted to and conferred upon them by an act of Congress approved July 2, 1864, entitled “An act to. amend an act entitled ‘An act to aid in the construction of a railroad and telegraph line from the Missouri River to the Pacific Ocean, apd to secure to -the Government the use of the same for postal, military,'and other purposes,’ approved July 1,1862,” subject to all the conditions and requirements in said act contained; and that said Burlington & Missouri River Railroad Company hereby binds itself to execute any further instruments, and to make any further conveyances which shall at any timo be required to fully and completely transfer all tbe rights, title, and interest which by virtue of said act of Congress it now has or may hereafter acquire in any lands, powers, or privileges in Nebraska to the Burlington & Missouri River Railroad Company in Nebraska.
In witness whereof, the said corporation has caused their seal to be hereto affixed, and the same to he signed by J. W. Brooks, its president, and countersigned by J. N. Denison, its treasurer, thereto, duly authorized, on this twentieth day of November, A. D. 1869.
Bur. & Miss. River Railroad Co.,
[seal.]- By J. W. Brooks, President.
J. N. Denison, Treas.
Among tbe “rights, powers, and privileges” assigned, transferred, and set over to the Nebraska company by said instru *624 ment was tbe above-named grant made to tbe Iowa company by section 19 of tbe Act of July 2, 1864.
In tbe Act of March 3, 1875, eb. 133 (18 Stat. L., 452; Siippl. Rev.-Stat., 171), was enacted tbe following provision :
Tliat no money shall hereafter he paid to any railroad company for the transportation of any property or troops of the United States over any railroad ■which in 'whole or in part was constructed by the aid of a grant of public land on the condition that such railroad should be a public highway for the use of the Government of the United States free from toll or other charge, or upon any other conditions for the use of such road, for such transportation; nor shall any allowance be made for the transportation of officers of the Army over any such road when on duty and under orders as military officers of the United States.
Tbe only question in this case is, whether this enactment operates to prohibit tbe payment of tbe money admittedly earned by “Tbe Burlington and Missouri River Railroad Company in Nebraska” in the transportation of property and troops of tbe United States. W.e do not think there is any ground for tbe question.
There is no doubt that tbe road of that company “was, whole or in part, constructed by the aid of a grant of public land,” but that mere fact did not bring it within tbe terms of tbe prohibition. To make tbe prohibition effective against payments to this company, it is necessary to show, not only that fact, but that tbe grant of public land was made either “on tbe condition that such railroad should be a public highway for tbe use of tbe Government of tbe United States free from toll or other charge,” or “upon other conditions for tbe use of such road for such transportation.”
To determine whether tbe land grant which aided in tbe construction of tbe road in Nebraska was made on any such conditions, it is only necessary to refer to section 19 of tbe Act of July 2,1864, above cited, to see, as we said before, that no conditions are there prescribed, and that tbe grant was an unconditional one. Tbe right to this unconditional grant was assigned to tbe Nebraska company with tbe express consent of tbe United States. When, therefore, that company received tbe aid of tbe laud grant, it did not thereby become “a public highway for tbe use of tbe Government, free from toll or other charge upon tbe transportation of property or troops of tbe United *625 States,’7 simply because the graut was not made with, any such stipulation annexed to it. Heuce, transportation done by that company for the Government was doné as for any other customer, and should be paid for accordingly. The judgment of the court is that the claimant recover the.sum of $4,477.80.